Let me just say that you were right, Judge Smith, on the language of the contract as it defines claims. It does say, of course, known or unknown, existing or contingent, determined or speculative, at law, inequity or otherwise. That's based upon the definition of claim or something, isn't it? Yes, it's in the definition of claim. And I think you and I would both be surprised if it weren't that broad, given the nature of the transaction. You'd be a really bad lawyer if that was in there. And I can't take credit for the drafting of the contract, but I do thank the person who did. This case, I'm going to get to the most difficult question first, because I know one of you is going to ask me. What was Judge Silver to do? Congratulations. She was faced with a difficult situation, admittedly. She had an admitted contract to arbitrate, an agreement that everybody admitted was signed by the parties. She had a petition under Section 4 of the Arbitration Act that the courts have said renders virtually unflagging obligation on the district court to enforce an agreement if there is an admitted agreement. She had an existing arbitration pending that was limited in scope to clearly arbitrable issues. The scope of the... That last comment, why did she have that? Well, she had it in front of her. She knew that... Yes. She knew that there was... She didn't have that in front of her. In other words, it wasn't... It wasn't pending in her court, but it was shown to her the complaint in arbitration was part of the record that she had. And the complaint in arbitration said enforce Section 2 of this allocation agreement. Can't we, in this circumstance, say that Judge Silver, based upon what was before her at the time, acted entirely properly? But that's no longer the situation. And the situation is that the claim is arbitrable and the issue is for the arbitrator. Thereafter, she rescinds the prior orders in light of changed circumstances and conforms to what we've got now. Is there anything wrong with that analysis? I don't think so. Well, except that it was done in front of her. In other words, the only thing that she did was she basically denied the motion and said, come back to me when this situation has changed. And obviously, if we make the decision in the first case and reverse it, obviously at that point in time the situation has changed. I don't think she's committed any error. What error has she committed? Well, I have to confess, if I were in her situation, I would be very reluctant to contravene an existing order from another district judge of the same level. It would be a tough decision to make. Basically saying, hold the phone. I don't want to get in the way of Judge Hunt. Exactly. See what Judge Hunt does. Exactly. And the only, you know, everybody has to make an argument, I guess. The only argument I can see is that Judge Hunt's order was clearly unconstitutional. He issued an injunction. Judge is wrong. He issued an injunction without request, without notice, without hearing. But did she know that? Did Judge Silver know that? I believe. Standing over there next to Judge Hunt. Well, we gave her his order immediately. And in that order it was clear what he was doing. There was no recitation of a hearing. No recitation of a request for an injunction. None of that that you would find in a Rule 65 injunction. Because Rule 65 says you have to set that forth. Accepting all that is true. In other words, at that point in time, what you're saying she should have done is say, you know, not actually contact Judge Hunt or anything like that. She should have said, oh, I'm just going to ignore his order at this point in time. And I'm going to create conflicting orders insofar as the parties are concerned by ordering. And what happens if the arbitrator at that point in time decides not to be as brave and to go forward? Well, they weren't. They weren't that brave. And I can't blame them. You know, you got an outstanding order from a sitting district judge, you're going to obey it. You're advancing this argument in a somewhat half-hearted way, saying, you know, I'm not sure he will. I have to confess it's a difficult situation. If she were to go forward and order arbitration despite Judge Hunt's order, she in a sense would be saying, I'm going to save the Ninth Circuit the trouble, and I'm going to tell everybody that Judge Hunt is wrong. Don't bother appealing to the Ninth Circuit. I'll decide it right here. Especially when there was an appeal to the Ninth Circuit. And I think she was, you could see in her order that she was encouraging this to go to you so that everything would be here at the same time. Dump it in your lap because you have big laps and can take care of it. For the purposes of our discussion, we all have empathy for Judge Silver. We don't think she did anything wrong. But right now, what are you asking this court to do vis-a-vis the Arizona action and Judge Silver? I'm asking you to remand for further proceedings consistent with your opinion, which I hope will be that the Nevada District Court was wrong and that under the weight of authority, because there is, in my view. If we rule that the issue is for the arbitrator and that Judge Hunt's order barring the arbitration is dissolved, then we just simply would send it back to Judge Silver without any further instruction other than to say, basically, see the Hunt case, basically. See the Hunt case and look at Section 4 of the Federal Arbitration Act. Which would then permit you to seek a motion to compel arbitration if the parties did not otherwise follow through. Correct. That's exactly right. Is there an argument based on the venue clause that the district judge in Nevada didn't have jurisdiction because it didn't have venue? I don't think so. You're getting now to a case that has intrigued me for a long time. The textile case. Not only was it very interesting reading because it had all these allusions to the clothing industry. But I don't think the reasoning was very tightly knit. I'm sorry, that's two. That's two. No, no. I warn you, this is a three strikes court. But I will tell you, my reading of that case is that it is not a Federal Arbitration Act case at all. It is a plain vanilla injunction case. There was no request under Section 3. There was no request under Section 4. There was no request under 9 through 11 of the Act. It was a plain injunction case. And did the court have jurisdiction and venue to issue an injunction to stay an arbitration or to stop an arbitration in Georgia? And the court looked at the arbitration clause and said these parties did not agree to arbitrate and I'm enjoining it. And the question of textile was the validity of the arbitration agreement itself. Correct. That's exactly right. There have been a lot of misinterpretations of that case. Will you take the occasion to narrow, explain, limit? It might be. It might be. You know, Judge Monroe McKay of the Tenth Circuit had a pretty good opinion on this subject in the Ansari case. And he's a good judge. He comes from Phoenix. Yes, he is. And that's a pretty good firm, I hear. He worked for my grandfather. Oh, yeah? And wasn't he also dean of Brigham Young University Law School? I know he was a professor there. But in any event, he's a good judge and I thought his opinion was well reasoned. And unless you have further questions for me, I'll let Mr. Pathetti proceed. Who, for the benefit of the audience, is with Lewis and Roca. A very fine firm. And our colleague, Mary Schroeder, was also with Lewis and Roca. Yes, she was, Your Honor. Thank you. May it please the Court, Randy Pathetti of Lewis and Roca for Mr. Moma. You can speak up, please. You bet. If you have any questions at the outset, given how much you've already heard, I'm happy to address them. But it certainly sounded to me as if there is something less than even a half-hearted argument that Judge Silver committed any actionable error in the only order that is the subject of the Notice of Appeal here. Her November 24, 2009 order was issued at a time when there was already a stay of the arbitration. And so her conclusion that she wasn't going to compel parties to participate in arbitration that another district court had already stayed seems to be well within her discretion under the governing standards. Why don't you assume for purposes of argument, unless any of my colleagues agree that we would agree with you about this, there's no point in going forward on that. But given that case, assuming that she did under the circumstances what was appropriate, where do we go from there from your perspective? Well, taking into account the feedback that Your Honors have provided, let me just try and play a little cleanup on a couple of the existing issues. Number one, Your Honor, with all due respect, I do want to clarify that that language in Moses Cone has been narrowed somewhat. In the first options case, in the textile case, in several other cases, it's been made clear that there is no policy favoring arbitration other than to enforce the agreements that parties have reached, number one. Number two, with respect to the question that was asked about whether the Nevada court had jurisdiction or venue under these circumstances, it clearly did. It had a pending case in front of it. Section 3 under the Arbitration Act provides for a mechanism to seek a stay. Section 4 is explicit regardless of the language that creates some ambiguity further on. It's very clear at the outset that Section 4 provides venue in any district court in which venue is otherwise appropriate. So I don't think there's any problem with the case being in Nevada, Nevada judge ruling on it, other than you may have some issues with the merits of what he did. But I don't think there's a jurisdictional or venue issue with what he did. That brings to sort of the forefront an issue that really didn't seem to be discussed much today. First is this issue of whether the venue clause is mandatory or permissive, in terms of the arbitration clause, whether it's mandatory or permissive. Candidly, that came up in greater detail in Nevada than it did in Arizona, although it was briefed there as well. But I think under this court's precedent, where sort of tie goes to it being permissive, a provision that simply says venue will be proper without any of the typical words that are used, venue shall be exclusively lie, the sole place for venue, the only place for venue, it shall be the place. Forgive me. You're talking about the proper venue for enforcing an arbitration clause, or am I misunderstanding? I'm talking about, Your Honor, the venue clause that's in the arbitration agreement is itself, I believe, clearly permissive. And the arbitration, if it takes place, should take place. Correct, Your Honor. And because of the point of whether you have an A or a Z in front of that word proper. That could be one way to turn it. Who would decide that issue, the arbitrator? Well, the issue of the record before you on this somewhat dominant at this point issue of whether all this is decided by the arbitrator is probably somewhat poor, I regard, because if you go back to the initial papers filed in both Nevada and Arizona, this isn't an argument that's made. It's not addressed in Judge Silver's orders, which she certainly tried to be very thorough. We really don't need to talk about it now. It's not involved in Judge Hunt's orders. So it's not something that was given a whole ton of thought by either judge, which I think goes a long way towards feeding into the standard that it ain't hardly clear and unmistakable of two district courts, and the parties missed it for the better part of the case. With respect, it seemed to me that the issue before them was not so much where the arbitration would take place, but whether there would be an arbitration. I don't know that they even talked about that, did they? Sure, but certainly if the position was that all this needed to be decided by an arbitrator, just the whole issue of arbitrability and stuff, all these issues don't belong here. First and forefront should have been the issue that you all have focused on today, and it wasn't. And I suppose you can go back and find a half sentence here, a half sentence there, but that was not the argument below. I'm not sure whether I get you, but I agree. Well, I'll take what I can get. But other than, again, if you look at the number of cases that are out there on this issue, courts are not particularly receptive to this issue that arbitrators decide issues of arbitrability. When parties are explicit and unmistakable on that issue, then courts have been willing to defer. But courts have not enforced agreements or clauses that are tucked into big, long block paragraphs on this issue. And I suspect if you were to conclude here that that clause somehow requires that all this, including the arbitrability issue be sent to arbitration, that would be going further than any case that is out there right now. You would want that case published, I'm sure. Boy, tough crowd today. Let me ask a question for you. Do you agree that the issue of the meaning of the arbitration clause is to be reviewed de novo by us? Yes, Your Honor. Yes, Your Honor. I don't see any reason why the district court would have been in a superior position to you on that issue. Any other questions? Thank you for your time. Thank you very much. Anything more to say? Lewis & Rocha is a very fine firm. No question about it. And this is only, I may have misunderstood, but I thought that Mr. Popetti said that we did not raise the issue below as to whether this was an issue for the arbitrators, that is, the threshold issue of arbitrability. We clearly did. The supplemental briefing. I thought he was talking about the issue of where the venue of the arbitration was. Yeah, that's what I thought. That's what I understood. And that wasn't really argued because there was already an arbitration pending in Arizona. Yeah, I think you and he are on the same page on that point. Oh, I'm sorry. Thank you. Thank you very much. Now the case of, oh, now which one are we doing which? Mastro versus Mamet, 09-17698 is submitted for decision. I can thank all of you for very nice arguments in a tricky case, made all the trickier by the maneuverings of all of the lawyers. Who are all very wealthy. Remember at the end of Great Expectations, the estate is entirely gone by the time the lawyers are finished. That's right. Okay. We're now adjourned. Before we leave, I'd like to say this. We will go back and conference. And I think Judge Wood has a plane to catch, but Judge Smith and I are willing to come back out and answer questions from students after conference, which should take us, oh, I don't know, 20 minutes or so. Okay. Thank you. All rise. This court is adjourned.
judges: Wu, Fletcher W. , Smith M.